UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Arthur Burnham
V.                                                 No.
Denver Paramedic E. Bell et al.

## VERIFIED COMPLAINT

### Introduction

This is an ADA damage claim filed Arthur Burnham under Title II of the American with Disabilities and sues Officers of Denver Fire Department and Denver Paramedics Division in their official capacities responsible for damages (compensatory and nominal) pursuant to Title II of the ADA 42 U.S.C. § 12131 et seq..

### Jurisdiction and Parties

1. This is action for damages pursuant to Title II of the American with Disabilities Act, 42 U.S.C. § 12131. This court is vested with original jurisdiction pursuant to 28 U.S.C. § §1331 and 1332.

2. Plaintiff ARTHUR BURNHAM ( hereinafter referred to as "MR. BURNHAM") is a Massachusetts resident who is currently hospitalized at the University of Massachusetts Medical Center awaiting placement in a long-term care nursing facility because of his Paraplegia. His current address is standupinfaith12@gmail.com.

3. The DEFENDANT is Denver Paramedic E. Bell. She is sued in her official capacity under the ADA

4. The DEFENDANT is Denver Paramedic A. Smith. She is sued in her official capacity under the ADA.

5. The DEFENDANT is Denver Paramedic K. Duarte. He is sued in his official capacity under the ADA

6. The DEFENDANT is a Captain of the Denver Fire Department whose name is unknown at this time. He is sued in his official capacity under the ADA

7. The DEFENDANT is an Officer of the Denver Fire Department whose name is unknown at this time. He is sued in his official capacity under the ADA

## Qualified Individual under the ADA

8. MR. BURNHAM Is a qualified individual with a disability of Paraplegia from the chest down.

9. Due to Paraplegia, MR. BURNHAM is substantially impaired in several major life activities. MR. BURNHAM is unable to walk, use his legs and is unable to regulate bowel movements. The ADA expressly defines major life activity to include major bodily functions. 42 U.S.C. § 12102(2)(A).

10. All events giving rise to this lawsuit occurred at the Denver International Airport in the County of Denver Colorado.

11. In addition to an award of compensatory damages, MR. BURNHAM seeks an award of nominal damages. It is MR. BURNHAM's position that an award of nominal damages against the DEFENDANTS, regardless of the amount, would confer significant civil rights to the public as a judgment in his favor would deter the Denver Fire Department and Denver Paramedics from discriminating against individuals with disabilities in the future.

## Major Life Function Affected By Disability

12. MR. BURNHAM adopts and re-alleges the factual allegations contained in paragraphs 1-11 as if fully stated herein.

13. On December 12, 2024, MR BURNHAM was impatient at the University of Massachusetts Memorial Campus Worcester MA. Umass has been searching for a long term nursing facility for MR BURNHAM who cannot take care of himself due to his paraplegia T-8 chest down.

14. Colorado Department of Corrections Parole officer Nathan Oldarf Informed MR BURNHAM that Colorado would not medically discharge his parole unless MR BURNHAM was physically in Colorado.

15. On December 12, 2024, MR BURNHAM left Umass Medical Center against medical advice to return to Colorado as ordered by Colorado DOC.

16. On December 13, 2024, MR BURNHAM's medical condition was too acute for him to fly to Colorado. MR BURNHAM was forced to go to Massachusetts General Hospital Emergency Room.

17. Imaging of MR BURNHAM's intestinal tract revealed his bowels were severely impacted because his spinal cord injury has disrupted the nerve signals that control bowel movements, leading to a condition called "neurogenic bowel," where he does not feel the urge to defecate or he will involuntarily empty his bowels because of the severity of his injury and the level of his spinal cord damage.

18. On Sunday December 15, 2024, MR BURNHAM remained in the Emergency Room until 3 hours before his United Airlines flight to Colorado was scheduled to depart..

19. Unfortunately, the Paraplegic involuntarily emptied his bowels during the 4 hour flight to Colorado. It was a terrible experience for MR BURNHAM as he was helpless to prevent the terrible odor of his incontinence from permeating the plane.

20.. The entire rear of the aircraft was disgusted at the overwhelming odor caused by the paraplegic sitting in his fecal matter now over 3 hours.

21. For MR BURNHAM it was a terrible experience of humiliation and distress to be scorned upon for a condition that was wholly out of his controle.

22. Additionally, MR BURNHAM was injured due to his legs being immobilized In the tight space causing severe edema and swelling of the legs.

23. Upon arrival in Denver United Airlines contacted the Denver Fire Department to extract MR BURNHAM from the plane.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA
### Disparate Treatment

24. When the Fire Department arrived to extract MR BURNHAM from the aircraft they began to severely ridicule and make fun of MR BURNHAM for his disability and loss of bodily function causing an overwhelming odor.

25. The Denver Fire Department was so hostile and abusive toward MR BURNHAM he started recording their conduct with his iphone.

26. While discussing how to remove the Paraplegic from the tight walkway of the airplane, an officer of the Denver Fire Dept gestures that it might be easier to toss MR BURNHAM out the emergency exit on the roof of the airplane. See, exhibit video 1.

27. When Denver Fire exited MR BURNHAM unto the passenger boarding bridge they were met by Denver Paramedics

28. Denver Fire and Denver Paramedics transferred Mr Burnham to a stretcher.

29. The combined group of Denver Fire and Paramedics began a group abuse of MR BURNHAM because of his unfortunate condition caused by his disability. See, exhibit video 2.

30. Denver Fire and Paramedics began "to sound off", or chant in unison that MR BURNHAM was a code 19 which is a term used to deny an insurance claim, essentially indicating the claim is not the responsibility of the standard health plan. See, exhibit 4 (google definition of code 19)

31. Basically the group was singing in unison that it was not the responsibility of Denver Fire and Paramedics to help MR BURNHAM under his circumstances.

32. Then Denver Paramedics became hostile and abusive toward MR BURNHAM because of his disability.

33. The Paramedics pushing the stretcher made loud and forceful remarks to ridicule the paraplegic for his loss of bodily function stating: "ah", "whoa", "ah" , "hot!", "hot!", "are you good?" as to describe the paraplegic who was sitting in his fecal matter for at least 3 hours and smelled terribly. See, Exhibit video 2.

34. The Paramedic's abusive and hostile conduct was intended to be hurtful and describe the condition of a paralyzed individual who had lost control of his body from the chest down.

35. After being made fun of MR BURNHAM was hurt, did not want to go with Paramedics to the hospital and would rather suffer in his condition than endure the ambulance ride with the Paramedics making fun of him MR BURNHAM requested Paramedics put him in his wheelchair.

36. After placing Mr Burnham in the wheelchair a female paramedic stated to MR BURNHAM "I hope you have the best day ever and the day that you deserve." See, exhibit video 3.

37. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

38. C.F.R. § 35.130 provides that "(1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability

> (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;
>
> (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
>
> (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;"

39. MR. BURNHAM was dependent on Denver Fire Dept and Paramedics to provide the Paraplegic with the same level of emergency medical care as anyone else.

40. By mocking and making fun of the paraplegic for his loss of bodily function, Denver Fire and Paramedics did not provide MR BURNHAM with equal access to medical service. The ridicule of the individual with a disability made it impossible for the class-member to obtain the same benefit of emergency medical care that is provided to others.

41. By and through their actions described above, Denver Fire Dept and Paramedics have violated 28 C.F.R. § 35.130(1)(iii) and Title II of the ADA. 42 U.S.C. § 12132.

42. Under the ADA, Plaintiff claims that: (1) that he is a qualified individual with a disability of paraplegia; (2) that he was excluded from participation in, or denied the benefits, services, programs, or activities, or was otherwise subjected to discrimination by the Denver Fire Dept and Denver Paramedics ; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability."

### Direct Evidence of Discrimination by Reason of Disability

43. MR. BURNHAM adopts and re-alleges the factual allegations contained in paragraphs 1-42, as if fully stated herein.

44. The Plaintiff's exhibited video 2 is Direct Evidence of Discrimination. The video is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision." Griffith v. City of Des Moines, 387 F.3d at 736 (8th Cir 2004). The video demonstrates on its face discrimination on the basis of MR BURNHAM's disability. Davidson v. Am. Online, Inc., 337 F.3d 1179, 1189 (10th Cir. 2003)

45. The invidious behavior and remarks were calculated to cause harm and to offend or insult the disabled class-member. The disparaging comments were made directly toward MR BURNHAM and were intended to directly describe the disabled class-member in the condition caused by his disability. See, Perry v. Woodward, 199 F.3d 1126 (10th Cir. 1999)(... evidence that any of the defendant's comments were intended to directly describe the plaintiff..).

46. The Defendants remarks, to include a hostility toward disability, can only be interpreted as intent to discriminate. See, Sanchez v. Western Auto of Puerto Rico, 68 F.Supp.2d 93 (D. Puerto Rico 1999)("direct evidence consists only of the most blatant remarks, whose intent could be nothing other than to discriminate")(quoting Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081 (11th Cir. 1990)).

47. The exhibited video of the DEFENDANT's conduct is evidence showing a specific link between the alleged discriminatory animus and the challenged conduct, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the DEFENDANTS to ridicule and insult MR BURNHAM for the symptoms caused by his disability. Deneen v. Northwest Airlines, 132 F.3d 431, 436 (8th Cir.1989).

### Other Similarly Situated Were Not Treated So Unfavorably

48. There were at least 100 other passengers on the United Airlines flight which arrived at the Denver International Airport. It was only MR BURNHAM who was mocked by Denver Fire Dept and Denver Paramedics. MR BURNHAM was clearly discriminated against but-for-cause of disability in violation of Title II of the American with Disabilities Act of 1990. 42 U.S.C. § 12132.

49. As a direct and proximate result of the DEFENDANTS actions the Plaintiff has suffered emotional distress, manifested by the unnecessary ridicule of an individual who is paralyzed from the chest down, and whose life is already worthless, and has constant thoughts of suicide. Being made fun of by paramedics, who were supposed to provide emergency medical care, was extremely unfair.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court: a) Enter judgment for

the Plaintiff and against the Defendants on all counts of this Complaint;

b) Award Plaintiff compensatory damages;
c) Award Plaintiff nominal damages;
d) Award Plaintiff punitive damages;
e) and grant such other reward the court seems proper;

## JUDGE TRIAL IS REQUESTED

A Judge trial is requested
Arthur Burnham
standupinfaith12@gmail.com

Signed on this 26 Day of December, 2024, and pursuant to 28 U.S.C. § 1746, I declare the foregoing true and correct

*[signature]*

Arthur Burnham